Good morning, your honors. May it please the court, Katherine Hinton for Andre Walker. May I reserve one minute for rebuttal? In this case, trial counsel inexcusably failed to move to suppress police testimony regarding a patently suggestive and unreliable purported out-of-court ID later retracted by a witness named Harrison, and that was admitted by the prosecution against Mr. Walker at trial. Now the most significant issue in this case relates to the all-suspect photo array that was presented to Mr. Harrison, the witness. It was comprised entirely of known gang members. Let me say at the outset there's no dispute that the photo array shown to Harrison was an all-suspect photo array. It was 12 photos. It was comprised entirely of gang members. The issue is not whether the police told Harrison that the array was a gang. The issue is not whether trial counsel knew that Harrison knew that it was a gang. Contrary to the Commonwealth's claim, the trial judge found in the motion for new trial decision that trial counsel was aware, prior to trial, that all the photographs in the array depicted alleged members of the Franklin Hill Giants. That's at Appendix 593. And also that Harrison knew the photo array depicted members of a gang, even though the police officer had no reason to know that Harrison knew that. But in any event, the record indisputably establishes the photo array did depict a gang. The motion for new trial judge, who was the same as the trial judge, stated in his decision at Appendix 603, Detective Martel had assembled the array using photographs of people whom the police believed to be associated with the Franklin Hill Giants. So this is a procedure that's arranged by law enforcement in terms of the United States Supreme Court decision in Perry versus New Hampshire. That's not an issue. The procedure was unnecessary. This offending array was deliberately put together by law enforcement five months after the shooting in preparation to interview a witness with whom the police had arranged an appointment in advance. So there's no exigent circumstances. It's police arranged and it is a very peculiar procedure for putting together a photo array. It's similar to the infamous Duke lacrosse case, which happened after the trial in this case. Now, at least, there's at least one court in District Court in Texas that has analogized this kind of procedure to one-man show-up or one-man line-up, which has been repeatedly disapproved by the U.S. Supreme Court. And Stilwell v. Deno, Simmons v. U.S., Neal v. Biggers, Manson v. Rathwaite, all those cases talk about a one-person show-up being widely condemned and disapproved and rarely ever okay, unless perhaps there's exigent circumstances or it's nonetheless reliable. Neither of which are at issue here. Essentially, an all-suspect photo array presents 12 single suspects at the same time. There are no fillers. There are no known innocent persons within the array. So every one of the photos in this array is a suspect. And there's no possibility of known error. Anyone that the witness chooses is going to be pursued. That's going to be a false positive identification. The SJC itself ruled that the all-suspect array was improper. The SJC ruled that the prosecution is greater with an all-suspect array and that the potentially unjust consequences are needlessly increased and that in the future no less than five fillers should be in an array for every suspect photograph. So once the SJC found that the all-suspect array was improper or significantly increased in potential unjust consequences, I submit that the Massachusetts SJC had a duty to determine if the procedure was constitutionally unpermissible. And the language for that comes straight from Simmons, which is whether it was unnecessarily suggestive and conducive to irreparable misidentification. The Massachusetts uses a per se exclusion rule that if the identification was suggestive, that's it. We don't go on to the second step of reliability. That Massachusetts rule is the first step of determining whether the identification was suggestive is supposed to be the same as the first step in the federal constitutional analysis, but the SJC bungled it here. They unreasonably applied U.S. Supreme Court law in Simmons and found that there was something different about the rate of false positive identification compared to the danger that a false positive identification will result in a wrongful prosecution. I submit there's nothing different there. I understand the SJC to be saying there correctly that the likelihood of the person making the pick that is at odds with who they saw is no greater or lesser whether all the people there are suspects or not. But then it goes on to say, and that just seems to me indisputably true, but then it goes on to say there's a separate problem, which is that when you have an all suspect array, because if I make a pick that's wrong, but the same rate of wrongness as I would have made a pick in a non-all suspect array, the consequences of that wrongful pick are much more serious because it can lead to a person then being treated as the culprit. Yeah, that's what the SJC said, but what Simmons says is that regardless of how the initial misidentification comes about, the witness is apt to retain the image in their memory, it's going to be irreparable, and that the issue is whether there's a likelihood of irreparable false misidentification. And so if there's 12... How is there any greater likelihood of misidentification? Do you mean at trial it will show up? That's only because the person who has now been picked wrongly will actually be prosecuted versus... That's what the SJC is saying, the SJC is agreeing with you. Right, but there's now 12 people who could be picked wrongly, who could be prosecuted. The SJC agrees with you, it says that. Yes. So the fact that the error rate is multiplied by 12, there's now... The SJC agrees with you on that too. And I submit that that counts as suggestiveness under Simmons. Okay, so the SJC, I don't read it at any point to say otherwise. Well if the SJC thought that that counted under Simmons, then they would have found it to be suggestive per se, and would have excluded it, and this court should find it to be suggestive and go on to the reliability analysis. The odd thing is that in the SJC's discussion of the all-suspect array, as I read it, they go on to then do a prejudice analysis. They say they didn't lock on to this suspect, they first say it's not suggestive, and then they say in any event it wasn't prejudicial. They say with respect to the chances of being a false positive identification, from the perspective of the chooser, there's no greater likelihood of an error. That seems to me indisputably true, but they then say the consequences of the false pick in an all-suspect array are greater because everyone you pick could be a suspect. They then do an analysis in that paragraph, as I read it, of okay, well here should we be worried about that? And the SJC seems to say no, because there's not enough evidence that they actually locked on to this person in consequence of the pick, given the co-operator testimony. Well I think they're wrong about that as well. With respect to that issue, don't we review that just for unreasonableness? Don't we review that just with deference? Because we're on habeas? Well, yes, you have to review it for unreasonableness on a habeas reading. Do you think that aspect of their analysis is unreasonable? That aspect of their analysis is unreasonable as well, because the only difference in the evidence between the defendant and his co-defendant was this identification. The other witnesses against him were all informants that were jailhouse informants. They were not believed by the jury, obviously, because they implicated both the defendant and the co-defendant, but the co-defendant was acquitted. And the jury specifically, after finding themselves deadlocked, went on to ask about identification and the police officer's interview with the witness. One other question which just strikes me as an odd thing about the SJC opinion. As I read it when it's talking about the all-suspect array, it seems to be, at least as I can tell, suggesting there is a problem that follows from the likelihood of prosecution of a false pick. But it then says in footnote 20, I think it is, because we conclude there was no reasonable likelihood that Harrison's pretrial identification would have been suppressed had defense counsel so moved. I just couldn't find the way of the opinion that it gives any reason for reaching that conclusion. I don't understand what the SJC did either, Your Honor. I think that the SJC found this procedure was somehow problematic, but didn't want to go so far as to say that that counts as suggestive. I think it counts as suggestive, whether it's an increase of the possibility of picking the specific defendant out of the photo array or an increase of the possibility of picking multiple people out of the photo array. Either way, there's an increase in false positive, increase in the rate of false positive identifications. And once the witness has latched on to one picture, there's an increase that they're going to continue that trial. And under Simmons, it's the same thing. And I don't, I think that the SJC sliced it too fine and should have found that it was suggestive. And this court should find that they were unreasonable in not so finding and should go on under the reliability analysis. We win. I mean, this is the most ridiculous. Before you sit down, can you tell me, I'm under the impression that the lawyer in this petition, as part of his trial tactics, which he consulted with your client, not to engage in this challenge to the identification. Am I correct? Well, I addressed that in my reply brief, Your Honor. The petitioner... Well, the petitioner, I think the facts are not that. Rather, instead, the trial counsel agreed that she, the only thing that we say should have been suppressed was the police testimony, not the witness's testimony. The witness said, I never saw that man or that man before in my life. But the witness wouldn't have come on if the... Well, that would have been the Commonwealth's choice. Well, how could they even put him on? Because the only strategy that is suggested is that trial counsel somehow liked the idea of the witness saying how much the police pressured him and hounded him. So we're not saying that the witness could not have been put on. And if the Commonwealth chose to put him on, the witness could have been put on. It's the police testimony regarding the fruits of the identification procedure that should have been suppressed. And trial counsel agreed, and it's in the record that trial counsel agreed that she and he was hounded. That wasn't the part that you're saying should have been suppressed. Wouldn't the likelihood of him coming on increase by allowing the identification to come in? I'm sorry? Wouldn't the likelihood of him being called, being put on as the end, increase by following the procedure she followed rather than the alternative one? She had not moved to suppress. She had not moved to suppress. The chances of this witness appearing would have been less. True. So wouldn't that be a strategic judgment that if I really think it's important for this guy to appear, the most certain way to ensure that is to make the choice she made? I suppose. But the witness didn't say anything harmful to the defendant. Only the police did. Isn't that something that was cautiously done and consulted with your client? The client just, she told the client what her recommendation was. The client said whatever you think is best. I mean, I don't think that there's anything anyone can read that, I mean, the client is not legally trained. He's just following her instructions. In any event, there's a backup argument that it would have been a manifestly unreasonable strategic decision. And I think we don't have a finding from the SJC about whether it was a strategic decision. No. As I understand, they reserved that question. I don't believe they addressed that at all. I see my time is up. Good morning. May it please the court. Matthew Landry for the respondent. The state courts reasonably applied Strickland v. Washington in this case. Do you mind pulling your distal? The state courts reasonably applied Strickland v. Washington in this case. We have a case here where the trial judge that presided over trial heard this post-conviction motion and had an evidentiary hearing, and he followed that with a 137-page decision in which he meticulously described all the facts, gave the parties the full opportunity to present all of the evidence that would have been presented had this would-be motion been filed. He credited defense counsel's tactical reasons for not moving to suppress the identification before trial, and his conclusions on that were unanimously affirmed by the SJC. The tactical reasons were affirmed by the SJC? The motion, not that aspect of it. Okay, so what do we do? We have, I think it's an affidavit by counsel in which she explains her tactical reasons, and the SJC never opines on whether it thought those were reasonable judgments that a trial counsel could make. What do we do, if anything, with that issue in the absence of an SJC finding on that point? Would we go to no-vote Strickland review of that issue? It would still fall under the AEDPA standard, because this is a state court decision. Not if they haven't passed on the issue. So the SJC didn't need to reach that issue, because it concluded that the motion wouldn't have been meritorious. So if we don't need to reach that issue, what would be our standard of review? I would say that you would need to review it under the AEDPA standard, because the motion The AEDPA standard tells me what, when the SJC has not passed on the issue. It says that you can, as I understand it, if the lower court judge has considered an issue that the higher court has not, you can look through to the reasons that the last court to consider that issue reached. Do you say we defer to the judgment of the trial court, then? I do, Your Honor. Do you have authority for that? My general understanding of the AEDPA standard is that that's how it works. There are cases I could supplement to the court. Even when the SJC says we're reserving on that question? So the SJC doesn't need to reach the issue, because it has an alternate ground to affirm on. I'm happy to supplement with authority to the court, if that's helpful. There are two reasons that the state courts give for, this is the SJC combined and the trial judge, give for why strict lent relief should be, why counsel's performance was not ineffective. First is, as we've been discussing, the motion itself simply wouldn't have been meritorious. So prior to trial, defense counsel looks at this identification and decides that the law simply is not on her side with this. And I think when this court's assessing whether that judgment was reasonable, it is saying something that the motion judge and then anonymous SJC basically takes her view of the law as well. So that's some indication that her opinion is reasonable. As to the merits of the identification itself, if this court takes the state court facts as they were found, what we have is this. We have an identification of 12 photos. All members of the array are reasonably similar in age and appearance. The petitioner does not stand out in any way from the face of the array itself. The police don't say or do anything to single them out. And it is a material fact, contrary to what the petitioners argued, that the police don't actually tell Harrison that this is an all-suspect array. Harrison doesn't know that when he makes a selection. What the police do do is say to him, let us know if you recognize anybody on this array, either because you think they were involved in the murder or because you recognize them because you live in the community where these people are all from. And he doesn't recognize anybody. So that's sort of a prejudice argument, but I think it's relevant to show that the fact that this was an all-suspect array doesn't affect the integrity of the identification procedure. I would also note that in that respect... Just follow up the logic of the SJC and whether you're disputing it or not, because as I read the SJC, it's agreeing with you that at least in the circumstances you're describing, there's no reason to believe that the chooser is any more likely to be lying when they say this is the person I saw when it's an all-suspect array than when it's not an all-suspect array. At the same time, the SJC says there's much reason to believe that the person being prosecuted as a consequence of the identification is falsely being prosecuted when it's an all-suspect array because whomever is picked will be somebody who you could say, ah, well, he must have really seen that person, whereas if it was a filler and he picked the same person wrongly, you would know immediately to discredit the pick. So what's wrong with that analysis? I think the analysis makes sense to me. So the harm with the all-suspect array, which is not done anymore, but the harm in the all-suspect array is that whoever the witness picks could be possibly prosecuted for that because the police, you know, that person's a suspect. But the due process concern that underlies the suppression motion that was before the But they made it clear in the argument the reason they thought it was suggestive and therefore unreliable was because it was all suspects. If I give you a list of 12 in a proper array and I point to one of them and I say, do you think it's that guy? Everybody agrees that's suggestive. If I now give you 12, all of whom, if you pick, it's going to be a suspect, and I say, do you think it's any of these guys? How is that any less suggestive? I'm directing you to certain people with the suggestion it might be one of them, and you can't go wrong. Whoever you pick, I'm going to think you got it right. Well, the police didn't say, didn't tell Harrison that they were all suspects, but I think it's a matter. They said, do you think it's one of these guys? And no matter who he picks, he's picked somebody they're going to think he must be telling the truth. That is the harm. So why doesn't that make it suggestive? Because the police have not suggested the petitioner, or have not singled out any one person. But he made it clear in his briefing, and the SJC understood it to be clear in its briefing, that he was making two different types of arguments. He was making an argument that, one, you directed me to pick among the people in the array, and two, by even just constructing the array this way, when I then pick someone, that is going to be the product of a suggestive process. And the SJC doesn't seem to disagree with that point. I think this, I'll respond to it a little bit of a different way. This court two years ago had a case, Moore v. Dickout, in which there was an identification, and that was a stand-alone due process claim, which is different than the Strickland claim here. But it's relevant in the sense that there, the police actually told the witness that these photos were of suspects, and the court found that contention to be meritless, at least in terms of a suppression due process argument. So I think, and this isn't even that close, where we have a case where the witness didn't even know. So I think the key here, for due process suppression purposes, is whether the police suggested the petitioner, or any one person, to the witness. And there's no evidence that that happened in this case. So there's no constitutional problem in your view with an all-suspect array? No, I've not found a case in which the Supreme Court, or this court, has reversed on that ground, has held on that ground. I agree it's not a best practice. It's not done anymore. That's not my question. Are you taking a position that it is not a constitutional violation? If we were viewing this de novo, your position would be, it is constitutionally permissible to use all-suspect arrays. That's my position, yes. What authority would you use for that? What makes that a reliable process? Whether it's reliable or suggested, the reason why I think it's constitutional is based on the fact that this court passed on that question two years ago in Moore v. Dekau. I want to turn to the second reason that the state courts found that counsel's performance was not ineffective. And that is that defense counsel calculated before trial that based on what Parison was going to say, if called, she thought that his testimony and the identification itself would help her case. And the whole trial theory, the whole theory upon which she tried this case, was that the police had done a poor job investigating this murder, and that they had rushed to pin the blame on the petitioner. And so in that case, the things that Parison had to say certainly fit that narrative, and it was helpful to her to have that come in. And sometimes there are cases where there's an identification that has reliability issues, and certainly there was ways that counsel presented the reliability issues to the jury, which is the proper place to have those issues presented. And she presented those issues to the jury, and the things that Harrison had to say about, you know, if the jury believed, for example, that he was intoxicated when the police visited him to make a selection, or if the jury did believe that the police pressured him, those things would have supported counsel's case. The time is up. Thank you. Thank you. Did Harrison testify? Harrison testified at trial. And did he say that he had never seen Walker in all his life? He said, I've never seen that man or that man before in my life. So that was helpful. That was helpful, but then Martel, the police officer coming in saying that Harrison had picked Mr. Walker out of a photo array was not helpful. And at the motion for new trial hearing, trial counsel, and this is somewhere within appendix 293 to 298, trial counsel agreed that Martel's trial testimony recounting Harrison's statements hurt Walker and helped the prosecution. She also stated in the motion for new trial testimony that she could have pointed out the absence or improper police investigation, whether or not she filed a motion to suppress the fruits of the identification procedure. Well, you can start over again, because I took up all your time. I think that the questions that have been asked here by Judge Barron get to the heart of my position in this case, which is the SJC knew that this was an improper procedure. It's hard to pinpoint exactly why it's an improper procedure. I think because it's so improper, it's hardly ever used. It was used in the Duke lacrosse case. It was used in a case I found out of Texas called McCrae. It's a blatantly improper procedure, and it increases the risk that someone will be falsely identified, even if not specifically pointing to the defendant. And because of that, it should be found suggestive under Simmons. And you suggest more vdico? Which aspect of more vdico? The aspect that your opponent's relying on to say that there's no constitutional problem because suspects were involved there, too. And I guess his account is that we, in our opinion, said that it was an all-suspect array. I'm not sure what. I'm not remembering more vdico to involve an all-suspect array. Perhaps I'm misremembering it, but I didn't find any other cases involving an all-suspect array other than commentary on the Duke lacrosse case and the McCrae case. I don't know what he's referring to there. Perhaps I'm misremembering it. But I don't, I think this is a blatantly improper procedure, and then there's no way it can be revived as reliable. It's five months after the fact, a fleeting glance down a dark street from a distance which faces are completely unrecognizable. I mean, every other aspect of this identification is just blatantly unreliable. And I think once you find it suggestive under Simmons, which this Court should, there's no way it can stand. And it was highly prejudicial because it's the only thing that distinguishes the petitioner from his co-defendant. Thank you. Thank you. Thank you.